## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

_____

**MUSSARAT BANO and BASHIR RAHEE**,

                         *Plaintiffs*,

    v.

**THE CITY OF NEW YORK**; **NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES COMMISSIONER JESS DANNHAUSER**, in his official capacity; **NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES CASEWORKER NICOLE RAMIREZ**, in her individual and official capacity; **LITTLE FLOWER CHILDREN AND FAMILY SERVICES CHIEF EXECUTIVE OFFICER CORINNE HAMMONS**, in her official capacity; **LITTLE FLOWER CHILDREN'S SERVICES CASE PLANNER RENEE HARTLEY-SAMMS**, in her individual and official capacity,

                    Defendants.

_____/

Case No. CV-23-4773

## COMPLAINT

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiffs Mussarat Bano and Bashir Rahee seek relief for Defendants' violation of their rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, and the Fourteenth Amendment of the United States Constitution.

2. The Defendants in this action, The City of New York ("City"), Administration for Children's Services Commissioner Jess Dannhauser ("Commissioner Dannhauser"), New York City Administration for Children's Services Caseworker Nicole Ramirez, Little Flower Children's Services Chief Executive Officer Corinne Hammons, and Little Flower Children's Services Case Planner Renee Hartley-Samms, implemented and enforced a scheme, on behalf of and in coordination with the Administration for Children's Services ("ACS"), to seize Plaintiff's child for nearly a month without notice or due process, in violation of the Fourteenth Amendment to the United States Constitution.

3. As a direct and proximate cause of Defendants' conduct, Plaintiffs suffered a seizure of their minor daughter, whose whereabouts were deliberately and unlawfully concealed by Defendants for nearly a month, in violation of their substantive and procedural due process rights. While Defendants eventually withdrew all child protective allegations leveled against Plaintiffs, Defendants' actions ultimately resulted in financial hardship and irreparable harm to Plaintiffs individually, and to their family unit.

4. Plaintiffs seek declaratory relief against the government officials and individuals acting under color of law who participated in or maintained the scheme which resulted in the unconstitutional seizure and concealment of their minor daughter, and monetary relief for damages suffered because of Defendants' conduct. Plaintiffs seek an award of attorney's fees and costs and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1343(a)(3) and (4) as this action seeks redress for violation of Plaintiffs' civil and constitutional rights.

6.  Plaintiffs' claims for declaratory relief are proper under 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57.

7.  Venue is proper before the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the acts and omissions complained of occurred in this district.

## JURY DEMAND

8.  Plaintiffs demand trial by jury in this action.

## PARTIES

9.  Plaintiff MUSSARAT BANO is a United States citizen who resides in Westchester County, New York. Ms. Bano is the mother of F.B. At all relevant times relevant hereto, Bano resided in Montrose, New York.

10.  Plaintiff BASHIR RAHEE is a United States Permanent Resident who resides in Westchester County, New York. Mr. Bashir is the father of F.B.[1] At all times relevant hereto, Bashir resided in Montrose, New York.

11.  Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to create and maintain the Administration for Children's Services, ACS, which acts as its agent in the area of child protection and for which it is ultimately responsible.

12.  Defendant JESS DANNHAUSER is the Commissioner of the New York City Administration for Children's Services, ACS. ACS is responsible for the investigation of all allegations of abuse and neglect for children in the five boroughs of the City of New York and determining what level of intervention is necessary. When remaining in their

---

[1] Plaintiffs replace their daughter's name with initials pursuant to Federal Rule of Civil Procedure 5.2.

care would result in an unmitigable imminent risk of harm to a child or children, ACS is responsible for timely petitioning a judicial authority for removal of the child from the parents' custody, and for providing timely notice and process to the child's parents. ACS and its agents deprived the Plaintiffs of their rights, privileges, and immunities. Defendant Dannhauser is sued in his official capacity.

13. Defendant NICOLE RAMIREZ is a Child Protective Specialist with the New York City Administration for Children's Services. Defendant Ramirez is sued in her individual and official capacity.

14. Defendant CORINNE HAMMONS is the Chief Executive Officer of Little Flower Children's Services, LFCS. LFCS, is a foster care agency contracted by the New York City Administration for Children's Services for placement of children in foster care. LFCS was responsible for managing F.B. 's placement in foster care. Defendant Hammons is sued in her official capacity.

15. Defendant RENEE HARTLEY-SAMMS is a Case Planner with Little Flower Children's Services, a foster care agency contracting its services to the New York City Administration for Children's Services and acting under color of law. Defendant Hartley-Samms is sued in her individual and official capacity.

## STATEMENT OF FACTS

### PLAINTIFF'S EXPERIENCE OF F.B.'S REMOVAL FROM THEIR CARE & CUSTODY

16. In June 2020, Ms. Bano and her daughter F.B. were with family in Pakistan. Mr. Rahee was home in Montrose, New York, working.

17. On or about June 23, 2020, Ms. Bano went to a local mall with F.B. and another relative. At the time F.B. was 16 years old, a Pakistani citizen, and a U.S. Permanent Resident.

18. At the mall, F..B. stepped into a store and never emerged. Alarmed, Ms. Bano sought the assistance of mall security officials. Upon review of closed-circuit security footage, mall officials identified F.B. escorted by another individual exiting the mall, and entering a vehicle.

19. Ms. Bano was terrified that her daughter had been abducted, trafficked, or worse. She reached out to local police, who tracked down the vehicle, which had dropped off both F.B. and her escort at the United States Consulate in Lahore, Pakistan.

20. As a U.S. citizen, Ms. Bano called upon the U.S. consulate in Lahore and the U.S. Embassy in Islamabad for assistance. Mr. Rahee attempted to do the same from the family's home in Montrose, New York.

21. For nearly a week, no official confirmed their knowledge of F.B's whereabouts or well-being. On June 29, 2020 – approximately six days after her disappearance, and only in response to the Plaintiff's continued efforts to locate their daughter – a State Department official informed Ms. Bano and Mr. Rahee that their daughter F.B. had "left" Pakistan and was "safe." The official refused to provide any additional information about her whereabouts or well-being.

22. Plaintiffs were alarmed to learn that their daughter had been transported internationally without their knowledge or consent, and sought to confirm her well-being and whereabouts with relevant officials. For nearly one month following her apprehension and transfer, Plaintiffs and their family members inquired with federal, state, and local law enforcement as to their daughter's whereabouts. Officials would confirm only that

F.B. was in the United States. Officials refused to share which region, state, or city their daughter was in. Officials refused to confirm who was caring for her, if anyone.

23. On or around July 20th, 2020, Plaintiffs confirmed with New York State police that F.B. had arrived at John F. Kennedy International Airport in late June, and that she was in the custody of a Child Protective Services agency. Neither federal nor state officials would confirm which Child Protective Services agency had custody of F.B. or who to contact.

24. On or around July 24, 2020, Plaintiffs discovered, only because of their own persistent contact with government officials, that F.B. had been transferred to the legal and physical custody of the New York City Administration for Children's Services.

25. For twenty-eight days, while F.B. was in the care and custody of the City of New York, ACS did not attempt to or provide notice of ACS' assumption of physical and legal custody of F.B. to her parents.

## DEFENDANTS' EFFORTS TO DEPRIVE PLAINTIFFS OF NOTICE AND PROCESS

26. From at least June 26, 2020 to July 7, 2020, ACS took custody of F.B. without a court order.

27. On June 26, 2020, Defendant Ramirez met F.B. at John F. Kennedy International Airport in Queens, New York, took her into ACS custody and transported her to a foster care placement. On the same date, F.B. informed Ms. Ramirez that her father Mr. Rahee was present in New York.

28. On June 30, 2020, F.B.'s case was assigned to Little Flower Children and Family Services ("Little Flower"), a foster care agency. Little Flower assigned the case to a case planner, Defendant Renee Hartley-Samms.

29. On July 6, 2020, Defendants Ramirez and Hartley-Samms organized and held a "Transitional Conference." Present at the conference were: Ms. Hartley-Samms, Ms. Ramirez, F.B.'s assigned foster parent, and F.B. Defendants did not attempt to notify Plaintiffs, and Plaintiffs were not notified of the conference. The Plaintiff's address in Montrose, New York was noted in the case record. During the conference, Ms. Ramirez acknowledged that Ms. Bano was at the Embassy in Islamabad looking for her daughter, F.B. She noted that Ms. Bano was "harassing" the Embassy.

30. The following day, July 7, 2020, Ms. Ramirez filed a petition pursuant to New York Family Court Act §1093 alleging that F.B. was a destitute child ("destitute child petition"). In her petition, Ms. Ramirez listed Plaintiffs' whereabouts as "unavailable", despite her constructive and actual knowledge that Mr. Rahee was contemporaneously residing at the family's home in Montrose, New York.

31. On September 29, 2020 ACS withdrew the destitute child petition against Plaintiffs and filed a petition pursuant to Family Court Act §1012 ("Abuse petition") in New York County Family Court.

32. On February 14, 2022, without ever having made a finding of maltreatment or abuse, the New York County Family Court dismissed the abuse petition and vacated all orders pertaining to the family.

## THE LASTING AND HARMFUL EFFECTS ON THE FAMILY FROM DEFENDANT'S UNLAWFUL ACTIONS

33. Plaintiffs have suffered incalculable harm owing to Defendant's actions. For days after their daughter disappeared, Ms. Bano and Mr. Bashir were beset with fear, anxiety, and uncertainty. They were worried that she had been abducted into harm's way, or worse.

34. The trauma of forced separation across international waters, without transparency or process, burrowed its way into Plaintiff's family as a perpetual destabilizing force, which has irretrievably damaged their family dynamic.

35. The impact on the family went beyond psycho-emotional harm. The stress and anxiety of the months of uncertainty and the years of family toil that came afterward have taken a physical toll on both Ms. Bano and Mr. Rahee.

36. Ms. Bano, who lives with hypertension, experienced increased blood pressure and was forced to adjust her medication regimen to account for the added stress and pressure, on the advice of her physician, who warned her of the possibility of grave consequences like stroke. On multiple occasions, Ms. Bano passed out due to increased blood pressure, and her vision deteriorated significantly. She had other significant physical manifestations of the stress including on her kidneys and worsening hernias, some of which led to surgical procedures.

37. Mr. Rahee's physician also advised him to adjust his hypertension medication to account for the added stress.

38. Finally, the family underwent significant financial hardship. Mr. Rahee and Ms. Bano exhausted their entire savings to hire a lawyer to represent them in the Family Court. As a result, Mr. Rahee, who is now 66 years old, was forced to delay his planned retirement to maintain financial stability.

**CAUSES OF ACTION**

**COUNT 1**
**Violation of the 14th Amendment's Due Process Clause**
**Jurisdiction under 42 U.S.C. §1983**
**(Against all Defendants)**

39. The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-38, as if fully set forth herein.

40. Defendants, while acting under the color of the law, violated Plaintiff's constitutional rights to care, custody and control of their minor daughter by egregiously seizing F.B. without notice or opportunity to contest her removal, without evidence of exigent circumstances, and without initiating post-deprivation proceedings in a timely manner, which resulted in Plaintiff's injuries.

41. Defendant Ramirez, in coordination with Defendant Hartley-Samms, and on behalf or as agents of Defendant City of New York, took custody of F.B. without a warrant or court order and without any notice to Plaintiffs.

42. Defendant Ramirez, in coordination with Defendant Hartley-Samms, and on behalf of or as agents of Defendant City of New York, waited 11 days to seek judicial approval or review of F.B.'s removal.

43. Defendant's actions violated the Constitutional rights guaranteed by the 14th Amendment's Due Process Clause.

44. Defendant's actions were not taken in good-faith and were in violation of clearly established law.

45. Plaintiffs have suffered devastating mental, emotional and financial injury as a direct and proximate cause of Defendant's deliberate indifference to their Due Process rights under the Fourteenth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

1. Declaring that the policies, practices, acts, and omissions of Defendants described here are unlawful and violate Plaintiffs' rights under the Constitution of the United States;

2. Awarding Plaintiffs compensatory and punitive damages as to all Defendants;

3. Awarding Plaintiffs reasonable attorney's fees and litigation costs, including but not limited to, fees, costs and disbursements pursuant to 42 U.S.C. §1988;

4. Awarding pre-judgment and post-judgment interest, to the fullest extent allowable by law, on the foregoing monetary awards; and

5. Such other and further relief as is just and proper.

Dated: June 26, 2023

Respectfully submitted,

__/s/_____
Tarek Z. Ismail, Esq.
Julia Hernandez, Esq.
Main Street Legal Services
Family Defense Practicum
2 Court Square
Long Island City, NY 11101
fdp@law.cuny.edu