UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MUSSARAT BANO and BASHIR RAHEE,　　　　　　　　　Civil Action No.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　23-cv-4773
　　　　　　　　　　　Plaintiffs,

　　　　　v.　　　　　　　　　　　　　　　　　　　　　　　　(Block, J.)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Henry, M.J.)

UNITED STATES OF AMERICA; THE CITY OF
NEW YORK; NEW YORK CITY ADMINISTRATION
FOR CHILDREN'S SERVICES COMMISSIONER
JESS DANNHAUSER, in his official capacity; NEW
YORK CITY ADMINISTRATION FOR CHILDREN'S
SERVICES CASEWORKER NICOLE RAMIREZ, in
her individual and official capacity; LITTLE FLOWER
CHILDREN AND FAMILY SERVICES CHIEF
EXECUTIVE OFFICER CORINNE HAMMONS, in
her official capacity; LITTLE FLOWER CHILDREN'S
SERVICES CASE PLANNER RENEE HARTLEY-
SAMMS, in her individual capacity,

　　　　　　　　　　　Defendants.

------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION TO RECONSIDER**

　　　　　　　　　　　　　　　　　　　　　JOSEPH NOCELLA, JR.
　　　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　　　Eastern District of New York
　　　　　　　　　　　　　　　　　　　　　*Attorney for Defendant United States of America*
　　　　　　　　　　　　　　　　　　　　　271-A Cadman Plaza East
　　　　　　　　　　　　　　　　　　　　　Brooklyn, New York 11201


Marika M. Lyons
Assistant United States Attorney

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STANDARD OF REVIEW ....................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

    I.   This Action Is Precluded by the Foreign Country Exception ................................................. 3

    II.  The Due Care Exception Forecloses A Claim Based On A Failure to
        Disclose Information ............................................................................................................ 4

    III. Plaintiffs Have Not Stated a Claim ...................................................................................... 9

CONCLUSION ......................................................................................................................... 10

# PRELIMINARY STATEMENT

Defendant United States of America (the "Government"), by its attorney, Joseph Nocella, Jr., U.S. Attorney for the Eastern District of New York, by Marika M. Lyons, Assistant U.S. Attorney, of counsel, submits this memorandum of law in support of its motion, pursuant to Local Civil Rule 6.3, for reconsideration of the Court's Memorandum and Order, dated June 26, 2025 (ECF No. 71, the "Order").

The Government respectfully submits that the Order should be reconsidered for three reasons. *First*, insofar as the Order finds the foreign country exception ("FCE") to the Federal Tort Claims Act ("FTCA") does not bar Plaintiffs' claims because Plaintiffs alleged "subsequent," "new[ ]," and "separate" torts committed by the United States in New York (specifically, the Government's failure to advise Plaintiffs of their daughter's safety and whereabouts) (Order at p. 13, 19), the Order overlooks the fact that all allegedly tortious actions of federal employees took place in Pakistan. In opposition (ECF No. 59-4 ("Opposition")) to the Government's motion to dismiss (ECF No. 59-1 ("Moving Mem.")), Plaintiffs did not point to any tortious conduct by employees of the United States in New York, or elsewhere in the United States, nor does the Order refer to any such conduct. Thus, the FCE bars Plaintiffs' claims. *Second*, the Court's conclusion that the failure to disclose the "whereabouts" of F.B. to Plaintiffs was tortious is in direct conflict with the due care exception ("DCE") to the FTCA. The DCE applies where a federal employee acts pursuant to statute or regulation. That is exactly what happened here: when the Government did not disclose F.B.'s specific whereabouts to Plaintiffs (who the Government understood to have been physically abusing her and threatening her life) it was because Government employees were acting pursuant to the Privacy Act. *Finally*, even if the Court were to find that no FTCA exception applies here, the limited conduct which the Court found survives the FCE (the failure of

Government officials in the United States to provide Plaintiffs with F.B.'s exact whereabouts pursuant to the constraints of the Privacy Act) cannot form the basis of a claim for negligence or intentional infliction of emotional distress ("IIED") (the only two claims Plaintiffs assert against the United States). For all these reasons, the United States respectfully submits that Plaintiffs' claims against the United States should be dismissed.

## STANDARD OF REVIEW

A motion for reconsideration may be granted where the moving party shows that the Court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *Mapp v. United States*, No. 95-CR-01162, 2019 WL 1546993, at *2 (E.D.N.Y. Apr. 9, 2019) (Block, J.) (reconsideration under Local Rule 6.3 appropriate where court "overlooked" a case). Alternatively, a court may grant a motion for reconsideration when doing so would "correct a clear error or prevent manifest injustice." *Tiffany & Co. v. Costco Wholesale Corp.*, No. 13-cv-1041, 2016 WL 11826351, at *2 (S.D.N.Y. Apr. 25, 2016) (granting motion for reconsideration after finding that defendant "carried its burden of demonstrating that the Court overlooked relevant factual matters . . . and that failure to correct the decisions on that motion would be unjust"); *see also Woodside Credit, LLC v. Best Car-n-Care Inc.*, No. 20-CV-3536, 2024 WL 5347326, at *1 (E.D.N.Y. Dec. 2, 2024) (Donnelly, J.) (granting motion for reconsideration where court overlooked controlling precedent that had not previously been put before the court, finding that the court could consider the precedent "in its discretion and to prevent manifest injustice"). "Ultimately, the decision as to whether or not to grant a motion for reconsideration is entrusted to the district court's sound discretion." *Tiffany*, 2016 WL 11826351, at *2.

## ARGUMENT

### I. This Action Is Precluded by the Foreign Country Exception

As the United States argued in its Moving Memorandum, Plaintiffs' claims concern alleged acts and omissions committed by employees of the United States outside of the United States, and therefore, this action should be dismissed pursuant to the FCE. *See* Order at p. 12. The FTCA, through use of the words "act or omission," does *not* refer to the place where the tortious conduct had "its operative *effect*," but rather refers to the place "where the act or omission *occurred*." *Richards v. United States*, 369 U.S. 1, 9-10 (1962) (emphasis added) (cited in Moving Mem. at 11). Thus, for purposes of an FCE analysis, that Plaintiffs allege that they experienced emotional harm in the United States does not assist them (particularly where that alleged harm was merely a continuation of the alleged emotional harm they experienced when F.B. first left her mother in Pakistan). *Id.*; Moving Mem. at p. 10-12.

While the Order refers to "subsequent tortious conduct in the United States" (Order at 13), "torts committed by the U.S. in New York" (*id.* at 19), and "newly created" injuries caused by "separate alleged tortious conduct in the United States" (*id.*), Plaintiffs have not pointed to any allegedly tortious conduct of federal employees in the United States.[1] Further, the Order does not describe any tortious conduct of Government officials that occurred in the United States. *See* Order p. 6-11. Indeed, to the extent the Court is referring to consular officials' failure to provide information to Plaintiffs about their daughter in response to their inquiries, the Court quotes the Complaint as stating that the Plaintiffs "called the consulate and the U.S. embassy *in Islamabad*" once they realized their daughter was missing. Order at p. 8 (emphasis added). Therefore, the United States respectfully submits that the facts as alleged by Plaintiffs and recounted by the Court

---

[1] There was routine screening of F.B. at JFK Airport (Opposition at p. 18) but the Order does not refer to this screening, let alone suggest that such screening was or could be tortious.

3

do not reflect any tortious conduct within the United States by federal employees, and the FCE should therefore bar Plaintiffs' claims.

**II.     The Due Care Exception Forecloses A Claim Based On A Failure to Disclose Information**

Even setting aside the FCE, the DCE forecloses Plaintiffs' claims. Plaintiffs allege consular officials informed them "that F.B. had left Pakistan and was safe" just three days after F.B. arrived in the United States. Order at p. 8-9. Thus, the Order finds that the only actionable tortious conduct with respect to the United States is the purported failure of Government officials in the United States to provide information about F.B.'s exact whereabouts to Plaintiffs. The DCE forecloses such a claim, because Government officials were executing statutes and regulations when they decided how much information to disclose to Plaintiffs absent F.B.'s consent (which F.B. refused to provide) or a court order (which Plaintiffs did not seek or obtain).

As set forth in the United States' Moving Memorandum, the FTCA's waiver of sovereign immunity is subject to several exceptions set forth in 28 U.S.C. § 2680. Moving Mem. at 2. Among the exceptions set forth in § 2680, Congress carved out any claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid . . . " 28 U.S.C. § 2680(a).[2] This

---

[2] While the due care exception to the FTCA was only briefly referred to in the Government's motion papers (Moving Mem. at p. 12), the Government respectfully submits that this exception has become even more pertinent given the Order's focus on the alleged failure of Government officials in the United States to inform Plaintiffs of F.B.'s precise whereabouts. Order at p. 19. Previously, Plaintiffs did not argue that such conduct prevented application of the FCE. Opposition at p. 18 (referring only to processing of F.B. through customs as activity in the United States precluding application of FCE). The Government also notes that because the DCE deprives the Court of subject matter jurisdiction, the argument can never be "forfeited or waived," and courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party . . . when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

provision "bars tests by tort action of the legality of statutes and regulations." *Blecher v. Holy See*, No. 22-2840, 2025 WL 2078415, at *8 (2d Cir. July 24, 2025) (citing *Dalehite v. United States*, 346 U.S. 15, 33 (1953)); *Clayton v. United States*, No. 18-cv-5867, 2019 WL 9283977, at *5 n.22 (E.D.N.Y. Aug. 1, 2019) (Bloom, M.J.), *report and recommendation adopted*, 2020 WL 1545542 (E.D.N.Y. Mar. 31, 2020) (Brodie, J.); *see also Hendry v. United States*, 418 F.2d 774, 782 (2d Cir. 1969) ("It is clear that § 2680(a) was intended to protect the validity of governmental regulations from challenge in a tort action for damages.") (citing *Dalehite*, 346 U.S. at 27). "Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citations omitted); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by the DCE). Thus, pursuant to the DCE, if the Government is "authorized" or "mandated" by statute or regulation to take the course of action that caused the alleged harm, then that action cannot form the basis for a suit under the FTCA. *Gjidija v. United States*, 848 F. App'x 451, 454 (2d Cir. 2021).

District courts in this Circuit have used a two-part test to determine whether the DCE applies. *Clayton*, 2019 WL 9283977, at *12 (collecting cases). "First, the Court determines whether the statute or regulation in question specifically prescribes a course of action for an officer to follow, and if the first prong is met, the Court then inquires as to whether the officer exercised due care in following the dictates of that statute or regulation. If due care was exercised, sovereign immunity has not been waived." *Id.* (cleaned up) (citing *Welch v. United States,* 409 F.3d 646 (4th Cir. 2005)). "Exercising due care 'implies at least some minimal concern for the rights of others.'" *Nwozuzu v. United States*, 712 F. App'x 31, 32 (2d Cir. 2017) (summary order).

Here, any failure to disclose information to F.B.'s parents was pursuant to a specific course of conduct prescribed by a statute or regulation, and thus, the first prong of the DCE is satisfied. Pursuant to the Privacy Act, federal agencies are generally prohibited from disclosing information about individuals without the prior written consent of the individual to whom the information pertains. *See generally* 5 USC § 552a(b). Section 552a(h) addresses minors, and states that a parent "may" act on behalf of the minor. The Office of Management and Budget ("OMB") Privacy Act Guidelines (which are incorporated into the Privacy Act, *see* 5 USC § 552a(v)) reinforce that Section 552a(h) is "discretionary and that individuals who are minors are authorized to exercise the rights given to them by the Privacy Act [ ]." OMB Guidelines, 40 Fed. Reg. at 28,970 (1975). The OMB Guidelines further provide that "there is no absolute right of a parent to have access to a record about a child *absent a court order or consent*." OMB Guidelines, 40 Fed. Reg. 56,741-43 (1975) (emphasis added). Particularly where, as here, there was evidence suggesting that harm could come to the minor if such information was disclosed, it was at least authorized, if not mandated, for the consular officers to withhold information.

Consistent with the provisions of the Privacy Act and OMB Guidelines, the Foreign Affairs Manual ("FAM") also provides that the privacy of all United States citizens or lawful permanent residents, including minors, should be respected and protected, and that parents do not have an "absolute right to the information under the Privacy Act." 7 FAM 1721(b)(1)(a)-(b). The FAM further states that in the context of 7 FAM 1721, "the explicit wishes of minors must also be respected. Normally, if you have been advised by a minor age 14 or older that he or she does not want any information released to a parent . . . , you should honor those wishes absent the presence of compelling circumstances affecting the health or safety of the minor child." 7 FAM 1721(b)(1)(c), 7 FAM 061(g). Here, F.B. was 16 ½ years old. She repeatedly made clear that she

did not want information to be shared with her parents, and alleged that her parents were complicit in her abuse, such that her health and safety would be *adversely* affected by any disclosure to them. Order at p. 7-11. Thus, pursuant to the Privacy Act and FAM, consular officials determined that it was not appropriate to share information with her parents, as doing so could reasonably be expected to jeopardize her safety and welfare.

The second prong of the due care analysis is also satisfied, because consular officials exercised due care. As the Order acknowledges, consular officials carefully considered what information they could disclose under the Privacy Act and informed Plaintiffs there was an ongoing consular case involving F.B. on the very date that F.B. arrived back in the United States. Order at p. 9. Further, Plaintiffs allege that consular officials informed them that F.B. had left Pakistan and was safe three days after F.B. arrived back in the United States. Order at p. 8-9. Starting on the very date F.B. arrived back in the United States, consular officials took the additional step of reaching out both to F.B. and her International Social Services case manager to encourage F.B. to either disclose information to her parents (which she was able to do, as she had access to email) or provide the State Department with a waiver to allow it to disclose information to Plaintiffs. *Id.* at 10. F.B. refused to do either. *Id.* at 11. Consular officials did everything they should have to disclose information to Plaintiffs within the constraints of the Privacy Act. In other words, they exercised due care in the execution of the Privacy Act.

Notably, Plaintiffs cannot avoid the DCE by arguing that the Government erred in interpreting the Privacy Act and its implementing guidelines to determine that consular officials should have provided more information to Plaintiffs. Where courts permit an inquiry into whether an agency exercised "due care" in its interpretation of the statute or regulation at issue, the DCE still applies when, at the time of such interpretation, there existed no controlling legal authority

7

clearly precluding that particular interpretation. *See Nwozuzu*, 712 Fed. App'x at 33 (due care applies to government's interpretation of a statute where there is "legal uncertainty" on the issue and no controlling legal authority clearly precludes that particular interpretation). *Doe v. Stephens*, 851 F.2d 1457, 1462 (D.C. Cir. 1988) is instructive. In *Doe*, where the Department of Veterans Affairs ("VA") disclosed information pursuant to a subpoena, and the disclosure was later found to be improper under the Privacy Act, the Court found that the VA could not be faulted for its earlier conclusion that the information could be disclosed: "[t]he Privacy Act's language is hardly self-explanatory: in pertinent part it permits disclosure of documents only 'pursuant to the order of a court of competent jurisdiction,' 5 U.S.C. § 552a(b)(11)." *Id.* ("We cannot, in short, fairly predicate negligence liability on the basis of the VA's failure to predict the precise statutory interpretation that led this court in *Doe II* to reject the agency's reliance on the Veterans Records Act as authorization for its adherence to the grand jury subpoena. Doe does not credibly allege any other acts evincing lack of due care."). So too, the consular officers cannot be faulted for their conclusion that they could only disclose limited information to Plaintiffs pursuant to the Privacy Act. At the time of F.B.'s repatriation (and indeed to this day) there was no authority clearly contrary to the State Department's interpretation of the Privacy Act, OMB Privacy Act Guidelines and FAM as limiting consular officials' discretion to disclose information about F.B.'s whereabouts to Plaintiffs. This is especially true because F.B. explicitly refused to provide a Privacy Act waiver; she credibly claimed a fear of harm if the information were to be disclosed; there was no pending formal records request; and Plaintiffs never provided (or even sought) a court order requiring disclosure.

Therefore, because the United States had the authority to refrain from disclosing information about F.B.'s whereabouts to her parents, the DCE bars Plaintiffs' claims.[3]

### III. Plaintiffs Have Not Stated a Claim

Even if, arguendo, the Court declines to dismiss on the basis of the FCE and DCE exceptions to the FTCA, the officials' decision to not disclose F.B.'s exact whereabouts due to the constraints of the Privacy Act is not conduct that can form the basis of a claim for negligence or IIED – the only claims Plaintiffs assert against the United States.

Plaintiffs cannot state a claim for negligence because any failure of the Government to disclose information was intentional. Indeed, it is clear from consular employees' communications with Plaintiffs, F.B. and her case manager, that consular officials consciously and carefully chose to limit the information they provided to the Plaintiffs due to the Privacy Act. Order at p. 9-11. Yet intentional acts "cannot form the basis of an action sounding in negligence." *Smith v. City of New York*, No. 14-CV-4982, 2015 WL 4008642, at *3 (E.D.N.Y. June 30, 2015) (citing *Cummins v. Schouten,* 554 N.Y.S.2d 369 (App. Div.3d Dep't 1990)); *Dewitt v. Home Depot U.S.A., Inc.*, No. 10-CV-3319, 2012 WL 4049805, at *11 (E.D.N.Y. Sept. 12, 2012) (finding that allegations of

---

[3] The United States also respectfully urges the Court to reconsider the Order insofar as it refuses to dismiss the claims against it on the basis of the discretionary function exception ("DFE") and private analog exception to the FTCA. Moving Mem. at p. 12-22. With respect to the DFE, while the Order states that consular officials should have told Plaintiffs F.B.'s whereabouts and that she was safe once she was "out of harm's way" (Order at p. 23-24), the Complaint alleges that consular officials did tell Plaintiffs "that F.B. had left Pakistan and was safe" just three days after F.B. arrived in the United States. Order at p. 8-9. Further, to the extent the Court finds that the information given was not sufficient, the Court overlooks the constraints of the Privacy Act, discussed *supra*. Plaintiffs do not contend that the Privacy Act is unconstitutional, nor has the Act been found unconstitutional in its over-50-year history. Thus, the Government's compliance with the Privacy Act cannot form the basis for a constitutional claim (even if Plaintiffs had alleged such a claim). With respect to the private analog exception, the United States respectfully submits that the Order errs in suggesting that the United States "barred" F.B. from speaking with her parents. Order at p. 25. To the contrary, consular officials affirmatively encouraged F.B. to share information with her parents, or to permit consular officials to do so. *Id.* at 10-11. F.B. refused.

9

"intentional" conduct was "not negligent," as there was "no basis in the record to support a finding that the [contact] was inadvertent, accidental or anything but willful") (collecting cases). Thus, Plaintiffs' negligence claim should be dismissed.

IIED, as the Order recognizes, requires "extreme and outrageous conduct" and "*intent* to cause [ ] severe emotional distress." Order at p. 26 (emphasis added). That standard is not met here. Consular officials communicated the information they thought was appropriate – given the above-referenced considerations (e.g., the Privacy Act and concerns for the welfare and safety of F.B.) -- to Plaintiffs. *Id.* at 10-11. F.B., however, refused to contact, or to allow the State Department to share more detailed information with, her parents. Thus, consular officials did not engage in "extreme and outrageous conduct" and did not intend to harm Plaintiffs. To the contrary, they acted with intent to provide Plaintiffs with as much information as appropriate given F.B.'s wishes and concerns for her welfare. *Philippeaux v. United States*, No. 10-cv-6143, 2011 WL 4472064, at *10 (S.D.N.Y. Sept. 27, 2011) ("[E]ven if plaintiff could overcome the many jurisdictional hurdles just discussed, we would nonetheless find that the allegations do not state a claim under New York law. A claim for IIED requires the defendant's activities to be extreme and outrageous, such that they exceed the bounds of decency . . . None of these requirements are satisfied here.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion for reconsideration, dismiss the claims against it, and provide such other and further relief as this Court may deem just and proper.

Dated: August 1, 2025
Brooklyn, New York

                        JOSEPH NOCELLA, JR.
                        United States Attorney
                        Eastern District of New York
                        *Attorney for Defendant United States*
                        271-A Cadman Plaza East, 7th Floor
                        Brooklyn, New York 11201

                By:   *s/ Marika M. Lyons*
                        Marika M. Lyons
                        Assistant United States Attorney
                        (718) 254-6484
                        Marika.Lyons@usdoj.gov

TO:    All Counsel of Record (via ECF)

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(C)**

  I, Marika M. Lyons, certify that Defendant's Memorandum of Law, dated May 14, 2025 complies with the requirements of Local Rules 6.3 and 7.1(c), in that it contains 3,470 words.

Dated: August 1, 2025
   Brooklyn, New York

               */s/ Marika M. Lyons*
               Assistant U.S. Attorney